Case number 4100003, Conn v. BDO Seidman. For the appellant we have David Deary. Yes, Your Honor. And for the appellee, Carrie Samowitz. Yes, Your Honor. And Allison Moore. Yes, Your Honor. Will you both be arguing? I do not. Mr. Giffrey, please proceed. May it please the Court, Counsel. This appeal arises from the trial court's ruling on a denial of a motion to compel arbitration, I mean on a granting to compel a motion to arbitration in two separate cases. One case involved New York law, which was the 002 case, which we'll refer to as the digital options case. The other case requires Illinois law, which is the distressed debt case, which is the 003 case. So it's a bit confusing in terms of the law. The Court consolidated these two issues. And so there are three issues on appeal, and I'd like to speak to two of them. One is in the digital option case, which is under New York law. The Court granted the motion to compel arbitration on the basis that under New York law, the claim that fraud, part of a grand scheme that permeates our contract, is preempted by the FAA, which is what we allege. That's the first ground I want to talk about. The second issue applies to both cases, and it's on the unconscionability issues. So with that being said, Your Honor, I'd like to move to the digital option case that deals with New York law and talk about the fraud permeating preemption issue. And in New York, it's a little different than under the FAA. In New York, under New York law, there's two ways to invalidate an arbitration provision. One is it's inconsistent with the FAA, and that's where fraud inducement of the contract. And the other prong is where fraud is part of a grand scheme that permeates the entire consulting agreement, and that is inconsistent with the FAA. And the cons moved to deny the arbitration on the grounds that BDO's fraud was part of a grand scheme that permeated the entire consulting agreement. The Court held that that prong was preempted by the FAA, and since we did not allege fraudulent inducement, the Court granted the motion to compel on that ground. The Court was wrong. The Court incorrectly held that even though the parties have agreed that New York law will apply to the arbitration provision, that the FAA preempts it. It relied on two cases that aren't on point, and it ignored two cases that were on point. The two cases that are directly on point are Bolt, which is a U.S. Supreme Court case, which indicates that when parties agree that state law will govern their arbitration provision, the FAA does not apply and does not preempt inconsistent state law. The second case, which the Court ignored, was a New York Court of Appeals case, the highest court in the state court of New York, and that is the Hackett case. And the Hackett case was right on point. The Hackett case involved an arbitration provision that had a New York choice of law, and the Court in that case said that when parties have an explicit New York choice of law provision in the arbitration provision, the FAA does not apply and does not preempt this inconsistent law. The two cases that the Court relied on was the Utica case, which had absolutely nothing to do with the facts in the Pond case. Utica did not involve a choice of law provision in any way. Utica simply stands for the general proposition that when parties do not agree that New York law governs their arbitration provision, the FAA applies and preempts inconsistent New York law. So Utica, the facts of Utica were completely different than the Pond case, and doesn't apply. The second case that the Court relied upon is the Prama Paint case, and that was not even a preemption case. In that case, the issue was whether or not under the FAA, who decides the issue of fraudulent inducement of a contract versus fraudulent inducement of an arbitration provision. It wasn't a preemption case. It wasn't a choice of law case. It did not stand for the proposition that when the parties agree under New York law that the arbitration provision is bound by New York law, that the FAA preempts the inconsistent law. It does not stand for that proposition. So the Court misapplied the cases under New York law, and we believe that this Court should... Counsel, I'm having a hard time wrapping my brain around this. You argue that New York law applies. Yes. And New York law says the FAA preempts. So how do you tie that together? You want New York law to apply, and New York law says that the FAA preempts New York law. Just the opposite, Your Honor. Okay, help me. Sure. New York law says this. When the parties agree that New York law governs an agreement, New York law applies, and the FAA does not preempt any inconsistent New York law. So where in our case New York law allows the cons to set aside the arbitration provision based on fraud permitting the entire contract, the FAA does not preempt that, even though it's inconsistent with the FAA. So it's just the opposite. Does that make... Have I cleared that up? I understand your argument, but explain to me again why the Utica case is not pertinent here. Utica did not involve a case where the parties had agreed that New York law applied. It was no choice of law provision at all. Why does that matter? Because that matters under New York law. If there's a New York choice of law provision, then the FAA doesn't apply. Well, but let me be more clear. If under Utica they determined that New York law applies, even if the parties didn't choose it, why does it matter from what source it's determined that New York law applies? I'm sorry, say that again, Your Honor. In Utica, didn't they determine that New York law applies? No, Your Honor. They initially held that the FAA applied, because there wasn't a choice of law. Okay? But then at the end of the decision, the court said, but even if New York law applied, then this plaintiff has not shown a probable basis showing that fraud permeates the entire contract. So the court initially held that there was no New York choice of law, so the FAA applied. And in that situation, they had to show fraudulent inducement of the arbitration provision itself. At the end of the case, it said, but even if New York law applied, where fraudulent permeation of the entire contract would set aside the provision, that in this case, the plaintiff did not make a prima facie showing of that fact. And the court said the way to show that is to show that the defendants were aware of their fraud at the time they entered into the arbitration provision and the contract with the plaintiff. So what Utica said was, there's no choice of law provision, so the FAA governs. And under the FAA, you have to show that fraud induced the arbitration provision. Now, what's at stake here, and which law applies? Is it whether the plaintiff must show fraud regarding the inducement of the arbitration provision, or whether they can show fraud throughout the contract as a whole? What's at stake here, Your Honor, is if New York law applies, then the arbitration provision can be set aside by showing the fraud permeated the entire contract, as opposed to the inducement of the arbitration provision itself. And the reason that's important is because in this case, BDO, five or six of their partners have been indicted and have pled guilty on this case for fraud and conspiracy to commit fraud, and they've made all kinds of admissions, which were in evidence in this case, where they said that the consulting agreements were a byproduct of fraud and that the entire transaction was a scam. So that's why it's important. But that might not be good enough to overcome the inducement for arbitration provision? Well, we believe it does, but the court held that the permeation argument didn't even apply, which is what we were relying upon in the most part. Utica talks about that. Utica says that under New York law, if you go under New York law, that one of the ways you can show that the fraud permeated the entire contract is to show that the parties were, that the defendants were aware of the fraud at the time they entered into the contract, and we've shown that. So we think the court erred in the way it applied, in applying preemption. It should have been under New York law, and the court should have held that fraud, that we did establish by a promulgation showing that fraud permeated the entire contract. What's at stake in this whole litigation, just to avoid the arbitration provision? Well, yes, Your Honor. Why does the plaintiff fear the arbitration? The plaintiff shudders at the arbitration provision, not just fears. Why is that, counsel? There is no punitive damages, and there's no discovery. And the reason the plaintiff shudders is because in order for us to prove the things that they have admitted in their plea agreements, we need discovery from not only VDO, but from the co-conspirators. And under Illinois law, under the Illinois Consumer Fraud Act, which we have alleged, punitive damages preclusion is per se incostable. There's a case right on point that we've cited, Tortorello, which says when you have an arbitration provision that has a punitive damages preclusion, that is unconstable, and needs to either be severed out or the entire arbitration provision falls. You say there's no discovery, but can't the arbitration panel authorize discovery? Well, it can. But the arbitration provision itself says no discovery is permitted unless the arbitrator allows it. And our point is this. The con shouldn't be put in that position because at the time that VDO inserted that provision into the contract and had our client sign it, they were aware of all their fraudulent activity. They have admissions in the plea agreements that long before the cons ever came along that they knew this was a complete fraud. And so it's our position that it's unconscionable when you look at the entire context of the facts, which you are supposed to do in looking at unconscionability, for them to even put the cons in a position where they have to rely upon an arbitrator to overcome the contract terms that says we can't have discovery. And so the issue's not really whether or not the arbitrator can allow it. The issue is we shouldn't be put in the position of having a situation where VDO knows of all the fraud, they've admitted to it before we enter into our consulting agreement, that they put an arbitration provision in there that limits our ability to prove our case, that limits their exposure. And so that's why we think that those terms are unconscionable. And the way the trial court looked at these matters is it did not look at the terms in the context of the entire transaction, in the context of the consulting agreement, in the context of the evidence which is required to do. So the reason that discovery limitations are unconscionable is because of everything that VDO knew at the time they had the cons sign the contract with the arbitration provision, which then they inserted a discovery limitation. It doesn't allow us any discovery unless the arbitrator allows it. Counsel, you've alluded to these convictions. What does the record show from the proceedings at the trial level as to who's been convicted and who they are in relation to VDO's side? Yes, Your Honor. The record shows that, and we've alleged it, that Greisman, Carrakesh, Bee, I think there's four or five of them. Who are these people? They're VDO partners that were all in the tax solutions group of VDO that were in charge of designing, marketing, and implementing this transaction. They all, this consulting agreement, the transaction, the facts that we've alleged in our case mirror that in the plea agreement and the people that have pled guilty are VDO partners that were in charge of this transaction. Well, to be more specific, I don't know much about these high-level investment outfits. How many VDO sidemen LLP? How big an outfit is this? Is this five partners or 50 or what? It's the fifth largest accounting firm in the country. It's an accounting firm? Yes. And how, of the people who've pled guilty, how many do we have? You said six? There's six, I believe, five. And are these people who, according to the pleadings, had direct involvement with the plaintiffs? These were the people who dealt with the transaction from a top level up that designed it, that directed the people that dealt with our client. So these were the bosses of the people who dealt with your clients? That's right. In other words, they, as you put it according to your pleadings, designed this whole scheme and have now pled guilty in federal court? They have pled guilty. Have they been sentenced? They have not been sentenced yet because there are other accountants, bankers, and lawyers that were involved in this scheme that are indicted and getting ready to go to trial. So I believe they're probably witnesses. Are the named defendants, affilies, these people? I see Grant Thornton, Jay Johnston, Mark Kelly, Porsche, Ann Brown, Michael Collins. Those are... Who are these people? Gramercy is the investment part, investment bank that was involved in the transaction. Chambrom was one of the BDO partners who worked in the tax solutions group that these guys that were indicted were his boss. And there's law firms and there's accounting firms and there are... Jay Johnston, Mark Kelly, who are they? They are employees or partners of Gramercy who was the investment bank and co-conspirator. Chambrom was a major partner within BDO's tax solutions group that sold these transactions and the people that had been indicted he worked with and were his boss. And this is all pled in our case in detail. And the complaint's about 150 pages. And so it meets a Utica test that says when you do allege fraud permeates the entire consulting agreement that you don't lodge bare-bone conclusory allegations. You have to have detailed allegations. These allegations are in fact statements of fact that aren't being disputed by the defendants? In this case... Who's been convicted of what? I mean that kind of stuff? Yes. The evidence in this case is we've alleged that the convictions, the plea agreements, the admissions arise out of the same transaction, the same people that were involved in the cons case and the same consulting agreement and the same conduct occurred in our case and in the trial court level BDO ignored it, didn't controvert it and the trial court ignored it. Well the reason I asked about all this is I'm not clear. So to make it clear BDO assignment isn't some output with 500 partners, the people who pleaded guilty were some... The Denver office having nothing to do with your people for instance? No. These people that pled guilty were the people that basically ran what was called the Tax Solutions Group that was responsible for the design, marketing and the selling of this particular transaction. These weren't outliers that were out running around doing their own thing. And your clients claim they lost big bucks in all this? Is that what happened? Yes, what happened was the cons... BDO had been their accounting firm. BDO came to the cons and said we've got a great tax reducing investment strategy for you that's completely legal. Went through the wholesale pitch because the cons had been working with BDO for a long time and believed them and they told them it was completely legal and they got hammered by the IRS with penalties, back taxes and interest. The IRS has held this was a... They weren't amused? They weren't amused at all. And so the issue here is does fraud permeate the entire consulting agreement? And if it does then the arbitration provision is unenforceable under New York law and is not preempted by the FAA. And with respect to the punitive damage aspect there's a case right on point in Illinois. It's a Tortorello case. We cite it in our brief. But when you allege a violation of the Illinois Consumer Fraud Act there cannot be punitive damages preclusion. It is unconscionable as a matter of law. So at least with respect to the punitive damages aspect either the entire provision falls because it's unconscionable or the court says you can sever that component out. But we assert that because of all the admissions of fraud because of all of the facts that have been uncontroverted that we have proven our unconscionable case which requires a showing that the arbitration provision was inserted into the consulting agreement to affect the fraud. We have shown that. And so the discovery limitations and the punitive damages limitations are unconscionable. And they're unconscionable substantively because they're one-sided. BDOs obligate... The cons obligations under the contract are simply to pay the fees. So if BDO has a claim against the cons it's for a payment of the fees, a subscription contract. There's no discovery needed. Isn't there some claim here by the defendants of sophisticated business people, your clients? Yeah. That's not the test, number one. Number two is that is a very conclusory allegation. There are no facts in this case at this point that they have any sophistication about a tax investment. I mean, that's why they pay BDO hundreds of millions of dollars over the last ten years so that they can get their advice. That is a very conclusory allegation and in fact the evidence is just the opposite. We have an affidavit by Mr. Kahn that says, you know, I'm a sophisticated business guy. I do a lot of stuff in the automobile area, but I know nothing about tax laws, arbitration laws, or investment strategies, which is what I hired these guys for. Thank you, counsel. You'll have time to rebuttal. Thank you. Good morning, Your Honors. Kerry Samwitz, BDO Seidman, and Michael Collins. Just to clear up a couple points quickly, the individual defendants, BDO-related defendants, were named here and have not been indicted or pledged to anything. Say again. Please speak up, counsel. The individual defendants, BDO defendants,    just to clarify that issue. The individual defendants, BDO defendants, were named here and have not been indicted or pledged to anything. Your Honor, plaintiffs say that... Did they work for the people who were... They did. They did. Plaintiffs say that they quake at the concept of arbitration. That's the problem. They really turn the presumption of the law on its head. The law for a generation has presumed that unless plaintiffs can do more, that arbitration is the preferred form for resolution of disputes. It doesn't matter what the amount of the claims is. It doesn't matter what the colorful allegations the claims are, the relative fault. That's all for the arbitrators to decide. There's no exception for a really bad fraudulent... Would we be adverse and would it be inappropriate for us? Because this case, frankly, I think the judicial term is it stinks for us to create the convicted in federal court by pleading guilty exception. I do not think that would be appropriate respectfully. Well, you know, this is a troubling prospect you presented to us here. We heard though these facts about video sidemen and a lot of serious misconduct. That's one thing, but when the people involved have pleaded guilty and are waiting sentencing, this puts very similitude to these claims and casts this case in a rather different light, counsel. And I'm wondering why should we be looking to apply the normal law  of  to this case? I'm sorry. I was going to say, you know, you missed my point. I don't care if they go  arbitration clause. My point is why shouldn't we just say when confronted with a situation like this that stinks about what defendants are accused of doing and we don't have to wonder if it's an accusation because they've pled guilty that the normal rules aren't going to apply and when the plaintiffs say arbitration won't work under these circumstances, they're right. Why shouldn't that be the rule of law? Respectfully no, Your Honor, because the courts have said for a generation that you don't reach the merits of the underlying dispute. That's for the arbitrators. What are the merits that are in dispute? For example, Your Honor, in Pari Delicto, for example, what did Mr. Kahn know about these deals? Mr. Kahn alleges that he knew  what he was doing. And the merits may also be that Mr. Kahn had complicity here, and that Mr. Kahn knew full well what he was doing. But that would be something that could be done litigated in Illinois courts where they want to sue. It could also be arbitrated. Well, why should the limitations of arbitration apply in a situation  the defendants have, in fact, pleaded guilty? That's what I'm wondering. Because the parties, and Mr. Kahn was a sophisticated lawyer and  good lawyer, can allow arbitration to be allowed. And  Supreme Court has repeatedly said that the fact that discovery is somewhat more limited in arbitration than it is in litigation is not grounds for denying arbitration. Among other matters, you don't have the same rules of evidence in arbitration, so you don't need it. Well, counsel, I don't know if you're familiar with this court's history, but this court, and I personally, and I have made several decisions over the last 15 years that have rejected, I think, every single effort of someone who wanted to avoid an arbitration contract on the grounds of, hey, you signed up for it, too bad, you're suddenly discovering there's no due process, well, that's what arbitration is all about. This case strikes me as different, and that's why I keep asking you, and all the others we've had just disputes, this is one where we have one side convicted in federal court of fraud, and that's a very troubling business for me, and that suggests that the normal rules don't apply. Two points, Your Honor, respectfully. There's no case that is ever held back. Someone's got to be first, counsel. What's the second point? The second point is they can resolve all those issues in arbitration. There's no reason why an arbitrator can't reach the same conclusion that Your Honor just reached and say this stinks and I'm going to give an award to plaintiffs. The second point is also the fact that what has to be resolved are issues like damages, issues of comparative fault, issues like invalid layoff. Let me ask you this thing, because this is just cutting the chase of what's troubling me. Mr. Derry alleged that, and I don't know the exact things that weren't, arose after they reached this follow the advice of BDO Seidman and company, which advice was given to them as a result of the scheme that the people have now pled guilty to in federal court. In other words, the people of BDO Seidman scheme for this fraud, the cons are lured into it, he says. They have big losses, and then BDO Seidman, some number of these people, are pled guilty to fraud, going back to the initial one in federal court. Is this timeline correct? Your Honor, there's a mix of facts there. Let me be more direct. This would be a less troubling case if the cons were lured into something, and then BDO Seidman is accused of some bad conduct afterwards, and wound up convicted in federal court as opposed to bad conduct before the federal court. Is this timeline correct? Your Honor, the facts have not been established. These are allegations of complaint. That's not my burden. It's a bedrock rule. It may not be your burden, but how are we as a court of reviews to view these facts if this is what the allegation is? Because it might make a difference to me, Counsel, so what am I supposed to conclude here? Your Honor, all I can say is there's a generation of law that says you're not supposed to look at the merits, you're not supposed to look at overall fraud, you're supposed to look at fraud in the arbitration provision only, which they admit they can't show. And I think your question is just how dangerous it is when you get into those waters because you're trying to resolve factual issues on a complaint when you don't have the other side and we couldn't put in the other side as to what the cons do. They were lured into five separate transactions over five years. But I'm wondering what  side is when we're confronted with convictions in federal court pleading guilty to fraud. Now what's the other side of that, Ledger, Counsel? Could I ask the question a little bit differently? Yes, sir. And I will confess that I am no expert on contract law. Right? But it seems to me that a contract is defined by the meaning of the lines on a particular subject. Correct? Yes, sir. With corresponding duties and obligations. If a contract was or the agreement to a contract was in essence fraudulently induced and that is the basis of the cons claim here, how is that a dispute, controversy, or claim in connection with either the performance or the breach of the contract? Your Honor, I think it is a dispute in connection with, I think courts have held many times that a claim for fraudulently induced would be within  arbitration agreement. But that's not my question. I wrote this down from the contract. Dispute, controversy, or claim in connection with the performance or breach of the agreement. Now, as I understand what the cons have alleged, that these slicksters from BDO put together this scheme, sent their minions out to prey on BDO Sideman clients, that to me evidences some degree of intentional fraud. Okay? How is that intentional fraud arising out of the performance or breach of the contract? Your Honor, courts have held, with a broad arbitration provision like this one, under the FAA, a claim of fraudulent inducement would be within that arbitration clause. Because you're trying to make it clear that the case law is very clear that tort claims are included within a contract arbitration provision. Because otherwise that's an easy end run around arbitration. But in any event, Your Honor, they have many, many claims that are based directly on the FAA.  have many, many different styles of fees that are directly required by the contract. If the Court permits, I want to just very briefly talk about the preemption issue and the New York Choice of Law issue. One of the    is the New York Choice of Law issue. We have cited a published opinion from last September that Mr. Deary admits goes against him. We also found a case that came out a few weeks ago that we sent to Mr. Deary and he said that the arbitration provision contained language that said that arbitration would be held in accordance with New York law and the Court said without language saying that arbitration would be enforced by would be enforced by New York law and